**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| S.A. JAMENDO, a company formed under the laws of Grand Duchy of Luxembourg,<br><br>Plaintiff,<br><br>v.<br><br>SUNO INC., a corporation organized under the laws of Delaware, and Does 1 through 50,<br><br>Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, VIOLATION OF LICENSE AGREEMENT, BREACH OF CONTRACT, UNJUST ENRICHMENT, AND UNFAIR AND DECEPTIVE ACTS AND BUSINESS PRACTICES**

Plaintiff, S.A. Jamendo ("Jamendo"), by and through their undersigned counsel, file this Complaint against Suno Inc. ("Suno") and allege as follows:

## NATURE OF THE ACTION

1.      Jamendo is a worldwide leader in connecting independent musicians with music lovers. It pioneered the use of permissive licensing, enabling artists to legally share their music through its platform, Jamendo.com. Through sustained effort, innovation, and consistent success over the years, Jamendo has evolved into a major platform, now hosting more than 500,000 tracks from over 40,000 independent artists worldwide.

2.      Jamendo carefully curates its extensive music portfolio, enhancing accessibility through creative categorization and detailed tagging that guide users toward discovering new artists and tracks. Through these sustained curation efforts, Jamendo has developed, and is the author and owner of, a valuable copyrighted compilation of data ("Jamendo Database"), encompassing hundreds of thousands of tracks on its platform. This dataset contains Jamendo's

original selection, coordination, and arrangement of musical works and sound recordings and associated metadata, including distinctive and granular tagging of each track.

3.      Through continuous investment in refining and expanding the Jamendo Database, Jamendo strengthens the quality and relevance of its platform, attracting both artists and listeners. These ongoing efforts create a dynamic user experience and reinforce the platform's value by driving engagement, discovery, and sustained user interest.

4.      Jamendo's platform also advances the commercial interest of its artists. Through its dedicated service, Jamendo Licensing, the company actively licenses tracks from its platform for commercial use. This ensures that artists not only share their music widely but also have meaningful opportunities to generate revenue from their work. For many artists and tracks, Jamendo has been granted the exclusive right to the commercial use of tracks. In such instances, artists are looking solely to Jamendo to promote and regulate the commercial use of their tracks for the mutual benefit of Jamendo and the artist.

5.      By leveraging both its platform and the Jamendo Database, Jamendo fosters user engagement and deepens connections with music, which in turn drives demand for commercial licensing. This ecosystem creates a direct pathway from discovery to monetization, enabling the use of tracks in films, television shows, advertising, and other commercial applications, while ensuring that artists benefit from the growing exposure and demand for their music.

6.      The Jamendo Database is a valuable asset independent of the tracks hosted on the Jamendo platform, serving as a key catalyst for connecting users with artists. To facilitate access to music, Jamendo has, in certain limited instances, made portions of the Jamendo Database available for non-commercial research under specific agreements. However, any commercial use has always required an appropriate license from Jamendo.

ME1\61603843.v1

7.      Suno promotes itself as a "music company" that is "built around a single purpose: transforming how people create and experience music." It advertises that users can generate music in seconds using its generative artificial intelligence (AI) platform.

8.      While seeking commercial success, Suno has blatantly disregarded Jamendo's intellectual property rights by using Jamendo Database as well as the musical works and sound recordings listed in **Exhibit A** to develop its AI platform without authorization, including training its AI engine, without any authorization from Jamendo. The musical works and sound recordings listed in **Exhibit A** are identified herein as a preliminary and representative sample; upon information and belief, they do not constitute an exhaustive list of registered works contained within the Jamendo Database. Jamendo is in the process of conducting a comprehensive search of the U.S. Copyright Office records, and anticipates identifying additional registered works within the Jamendo Database during the discovery process in this matter.

9.      Building on this alleged infringement, Suno has reported that more than 100 million people have used its platform, resulting in over 2 million paid customers and more than $300 million in annual revenue. As of June 3, 2026, Suno has reported a valuation of $5.4 billion, following its recent Series D financing round of $400 million. *See* Mikey Shulman, *The Next Chapter for Suno* (June 3, 2026), https://suno.com/blog/series-d-announcement (last visited June 17, 2026).

10.     Suno's conduct is a blatant violation of the Copyright Act of 1976. The Copyright Act of 1976 reflects a carefully calibrated balance between the rights of authors and the interests of the public, rooted in the constitutional mandate to "promote the Progress of Science and useful Arts" by granting authors and inventors exclusive rights to their works for limited times. *Universal City Studios, Inc. v. Sony Corp.*, 659 F.2d 963 (1981); *Threshold Media Corp. v. Relativity Media,*

3

*LLC*, 166 F. Supp. 3d 1011 (2013); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (2006). This balance is achieved through a framework of exclusive rights, limitations, and exceptions designed to incentivize creativity while ensuring public access to knowledge and culture.

11.     Suno's conduct has disregarded the balance struck by the Copyright Act of 1976 by taking and commercially using Jamendo's Dataset and many tracks for which Jamendo holds the exclusive right to use commercially. Suno's conduct has caused significant harm to Jamendo, including loss of control over its compilation, diminution in the value of its licensing market, and loss of revenue.

12.     Jamendo seeks injunctive relief, damages, restitution, disgorgement, and all other appropriate relief.

## PARTIES

13.     Plaintiff Jamendo S.A. (who may also be referred to as "S.A. Jamendo") is a company formed under the laws of the Grand Duchy of Luxembourg, with its registered office and principal place of business located at 51, Rue de Strasbourg, L-2561 Luxembourg.

14.     Defendant Suno Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 17 Dunster Street, Cambridge, Massachusetts 02138.

## JURISDICTION AND VENUE

15.     This is a civil action seeking injunctive relief and damages for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338(a), and § 1367.

16.     This Court has personal jurisdiction over Suno because Suno is a resident of this District. Suno maintains its principal place of business at 17 Dunster Street, Floor 4, Cambridge,

4

ME1\61603843.v1

Massachusetts 02138, and is therefore "at home" in this District.

17.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(a) because Suno resides in this District, may be found in this District, and has its principal place of business in Cambridge, Massachusetts.

## STATEMENT OF FACTS

### Jamendo's Business

18.    Jamendo is "all about connecting musicians and music lovers from all over the world." Jamendo promotes the music of independent artists by creating a platform for their music to be discovered for free by Jamendo's users for their personal, non-commercial use, and also provide an opportunity for commercialization of the same music through licensing for commercial purposes. Through this dual-purpose model, Jamendo's platform has grown to have over 500,000 sound tracks shared by over 40,000 artists from over 150 countries throughout the world.

19.    Jamendo's effort to promote artists begins with its unique licensing model. Jamendo requires all artists listing tracks through Jamendo to grant specific limited licenses allowing royalty-free personal use of tracks. This allows Jamendo's users to freely explore, discover, and enjoy new music. Should users wish to use tracks from Jamendo's platform beyond personal use, moving into any form of commercial, more than 65.000 emerging artists have authorized Jamendo to license commercial use of their tracks. Frequently, artists have authorized Jamendo the exclusive right to use tracks commercially, including the exclusive right to authorize third parties' commercial use of tracks. By giving a fair share of the revenues to the artists, Jamendo helps them focus on creating music. In fact, when a license is purchased from Jamendo, the author receives up to 60% of the license price.

20.    To support its dual-purpose model, Jamendo prioritizes the curation, organization, and licensing of all musical content on its platform. In doing so, it has developed and maintains

5

internal metadata systems, including tagging frameworks, classification methods, and organizational schemas used to structure its content. Central to these efforts is the Jamendo Database, which comprises metadata associated with each track. This metadata is curated through human intervention and is created and continuously updated based on editorial judgment and qualitative assessment. Such curation includes the characterization of each track's genre, mood, instrumentation, and other defining attributes.

21.     The structured Jamendo Database comprises an organized compilation of metadata and content that distinguishes it from a collection of unorganized factual information. Its organization and content are specifically designed to support discovery, recommendation, and licensing use cases. In this way, the Jamendo Database serves as a catalyst for connecting users to artists through discovery and recommendation, while also connecting artists to users through the commercial licensing of tracks.

Creation of the MTG-Jamendo Dataset

22.     The Jamendo Database is a valuable asset independent of the tracks hosted on the Jamendo platform. To facilitate access to the music of independent artists, Jamendo has, at times, made the portions of the database available for non-commercial research purposes.

23.     In one instance, in or around 2019, Jamendo created a custom subset of the Jamendo Dataset in connection with a publicly funded academic research collaboration with the Music Technology Group ("MTG") at Universitat Pompeu Fabra in Barcelona, Spain. This subset incorporated Jamendo's structured metadata systems and organizational schema and is known as the "MTG-Jamendo Dataset." The MTG-Jamendo Dataset was created from the larger Jamendo Database using specific creative selections of tracks that Jamendo identified as tracks that would further the research purposes of MTG.

24.     The resulting MTG-Jamendo Dataset reflects and embodies Jamendo's underlying

6

organizational structure, including its selection, coordination, and arrangement of metadata and associated content.

25. The MTG-Jamendo Dataset has been made publicly available, including through repositories hosted on GitHub, an online platform widely used to host and distribute datasets for research purposes. The MTG-Jamendo Dataset repository is available at https://github.com/MTG/mtg-jamendo-dataset.

26. The MTG-Jamendo Dataset was developed for and has been widely used in academic and research contexts, including for the evaluation and development of music-related technologies.

27. Notably, MTG describes the MTG-Jamendo Dataset as a "new open dataset for music auto-tagging" and confirms that it "contains over 55,000 full audio tracks with 195 tags from genre, instrument, and mood/theme categories." Through its repository on GitHub, MTG further states that it "provides elaborated data splits for researchers" and reports "the performance of a simple baseline approach on five different sets of tags: genre, instrument, mood/theme, top-50, and overall." The repository also "contains metadata, scripts, instructions on how to download and use the dataset and reproduce baseline results."

28. The MTG-Jamendo Dataset on GitHub is intended for research use and includes a recommended citation: Bogdanov, D., Won M., Tovstogan P., Porter A., & Serra X. (2019). *The MTG-Jamendo Dataset for Automatic Music Tagging*, Machine Learning for Music Discovery Workshop, International Conference on Machine Learning (ICML 2019).

<u>Licensing Restrictions Governing the MTG-Jamendo Dataset</u>

29. The GitHub repository hosting the MTG-Jamendo Dataset is publicly available but expressly states that "the metadata is licensed under a CC BY-NC-SA 4.0" license. The CC BY-NC-SA 4.0 refers to the Creative Commons Attribution-NonCommercial-ShareAlike 4.0

7

International License, which permits use for non-commercial purposes while requiring attribution and the sharing of derivative works under the same terms. This licensing model enables researchers to use the MTG-Jamendo Dataset to advance their research objectives.

30.    However, the CC BY-NC 4.0 license permits use of the MTG-Jamendo Dataset for non-commercial purposes while prohibiting use directed toward commercial advantage or monetary compensation.

31.    The MTG-Jamendo Dataset GitHub repository also contained an express notice stating that it is made available solely for non-commercial research and academic use. MTG's GitHub repository states:

> Please note that the MTG-Jamendo Dataset is made available solely for non-commercial research and academic use. Any other use, including but not limited to commercial applications, requires prior written authorization from Jamendo S.A. For any commercial use requests, please contact Jamendo's licensing team at hello@jamendo.com to obtain a license adapted to your project. Commercial use is defined as any use that is intended for or directed toward commercial advantage or monetary compensation, including but not limited to uses generating revenue through advertising, affiliate programs, or product integration.

32.    These notices further specify that commercial use includes any use intended for or directed toward commercial advantage or monetary compensation, including uses that generate revenue through advertising, affiliate programs, or product integration.

33.    The GitHub repository through which the MTG-Jamendo Dataset is distributed provides direct access to the dataset files together with accompanying documentation and licensing information, including the CC BY-NC 4.0 license and the non-commercial use notice. These materials are presented in connection with access to and use of the MTG-Jamendo dataset, such that users downloading and using the dataset are placed on notice of, and proceed subject to, those terms.

34.    These licensing terms reflect the existence of a commercial market for licensing

8

datasets and structured metadata for use in AI and related technologies.

Commercial Licensing Market and Value of the Jamendo Database
and the MTG-Jamendo Dataset

35.    Jamendo has entered into commercial agreements involving the use of the Jamendo Database, including its catalogue, metadata, and related datasets, such as the MTG- Jamendo Dataset, for AI and machine learning purposes.

36.    Jamendo has been approached by multiple companies seeking access to its catalogue, metadata, and related datasets for AI-related uses. Pricing for such uses is negotiated on a case-by-case basis depending on factors including the customer profile, intended use, amount of content, territory, and duration.

37.    Jamendo has not granted licenses for use comparable to the large-scale commercial training of generative AI systems such as SunoAI without a specific negotiated agreement and compensation structure.

38.    The MTG-Jamendo Dataset alone contains proprietary information related to approximately 55,000 to 56,000 tracks from approximately 3,500 unique artists.

39.    A dataset of this scale and organization provides immediate access to a large catalogue of rights-cleared music with detailed metadata, classifications, and tags suitable for use in AI training.

40.    Building or licensing a comparable dataset would require substantial time, expense, and resources, including obtaining rights from thousands of artists, organizing and maintaining a large music database, manually reviewing and validating metadata, creating and refining tags and classifications, and ensuring that tracks are legally cleared and commercially usable.

41.    By using the MTG-Jamendo Dataset without authorization, Suno obtained substantial value, including immediate access to a large, organized, and commercially useful music

9

ME1\61603843.v1

catalogue. Suno also avoided the time, cost, and effort required to independently source, clean, organize, and validate comparable data, including the value inherent in the dataset's structured organization and curated metadata.

### Jamendo's Investment and Distinctive Features

42.     Jamendo has invested significant resources over many years in developing and maintaining its music catalogue, platform, metadata, and related systems, including the Jamendo Dataset.

43.     This investment includes, among other things, the technical development and maintenance of its database and platform, personnel dedicated to moderation, tagging, and curation, internal quality control and rights verification processes, and the creation and maintenance of proprietary classification and tagging systems.

44.     Jamendo's employees manually review, confirm, and, where appropriate, adjust and improve metadata associated with tracks in its catalogue and Jamendo Database. This manual review includes, among other things, genre, mood, theme, and instrument tags, as well as overall metadata accuracy and completeness.

45.     Jamendo's employees curate tracks into themed playlists and commercial categories. On average, approximately 120 tracks are manually reviewed and curated each day as part of these processes.

46.     The MTG-Jamendo Dataset is widely used in the academic and research community because it combines a large catalogue of music with detailed metadata, genre tags, and audio descriptors.

47.     The MTG-Jamendo Dataset represents only a subset of the broader Jamendo Database, which is significantly larger and contains additional curated information, classifications,

and metadata created and maintained by Jamendo. The MTG-Jamendo dataset is a derivative work based on the Jamendo Database.

48. What distinguishes the MTG-Jamendo Dataset is not only the number of tracks, but also the manual review and enhancement of metadata, the organization and classification of tracks, and the curated playlists and commercial categories.

49. These features reflect substantial investment, expertise, and ongoing effort, and contribute to the commercial value of the MTG-Jamendo Dataset and Jamendo's broader Jamendo Database.

## Suno's Unauthorized Use of the MTG-Jamendo Dataset, Jamendo Database, and Tracks Exclusively Licensed to Jamendo

50. Suno claims to be a "music company" that is "transforming how people create and experience music." It relies on generative AI to enable users to generate music. Suno's stated vision is to "build[] a future where anyone can make great music. Whether you're a shower singer or a charting artist, [Suno] break[s] barriers between you and the song you dream of making."

51. As with any generative AI service, Suno must "train" its software model using large volumes of data, including sound recordings and related metadata. This data is incorporated into a training dataset that enables the system to identify patterns and generate outputs in response to user inputs. The training process necessarily involves ingesting and copying data, as well as storing either the original data or derivative forms of it. Where copyrighted works are involved, such reproduction and the creation of derivative works must be authorized by the rights holder or otherwise constitute unlawful infringement.

52. By its own admission, Suno embraces the view that "impatience is a virtue" and emphasizes "extreme speed" in developing and improving its service.

53. In its haste to achieve commercial success through the development of its

11

generative AI platform, Suno has disregarded Jamendo's intellectual property rights by using the MTG-Jamendo Dataset, the Jamendo Database and various musical works and sound recordings listing within the Jamendo Database including those listed in **Exhibit A** without authorization. Such conduct constitutes infringement of Jamendo's copyrights through the unauthorized use of the dataset for the development of a commercial generative AI platform.

54.    Additionally, upon information and belief, Suno copied, ingested, stored, and processed various audio tracks listed in the Jamendo Database and the MTG-Jamendo Dataset, including many tracks for which Jamendo holds an exclusive right to commercial exploitation. By copying such musical works and sound recordings for commercial purposes, Suno has infringed upon the exclusive rights under the Copyright Act of 1976 in those audio tracks. Upon information and belief, the artists of such tracks exclusively licensed to Jamendo have not granted permission to any third party to exploit such tracks commercially. As Jamendo holds the exclusive right to commercial exploitation, Jamendo has standing to assert claims of copyright infringement falling within the scope of Jamendo's exclusive license, including at least the exclusive right to reproduce, modify, fix on any media, publish, broadcast, distribute or transfer in any format the musical works and sound recordings.

55.    Building on its infringement of the MTG-Jamendo Dataset, the Jamendo Database and various musical works and sound recordings listing within the Jamendo Database, Suno has recently announced that more than 100 million users have engaged with its platform, resulting in over 2 million paid customers and over $300 million in annual revenue. Moreover, while only launching in or around July 2023, Suno recently announced a Series D investment of $400 million with a post-money valuation of $5.4 billion. *See* https://suno.com/blog/series-d-announcement. Despite this rapid growth and substantial valuation, Suno has continued to disregard Jamendo's

12

intellectual property rights by taking, reproducing, storing, and using the MTG-Jamendo Dataset in the development of its AI platform.

56. Upon information and belief, Suno copied, ingested, stored, and processed the MTG-Jamendo dataset, including its structure, organization, and associated metadata, within its machine learning training systems.

57. In or about Spring 2023, Suno developed and publicly released a text-to-audio generation model known as "Bark," which was released as an open-source model, making it freely available for download, use, and modification by the public

58. Upon information and belief, Bark is designed to generate speech, music, and other audio content from text-based inputs, and has served as the basis of Suno's current AI platform.

59. At or around the time of Bark's public release in Spring 2023, a table describing the datasets used to train the Bark model was made publicly available on GitHub, Hugging Face, and related technical documentation. That table expressly identified Jamendo as one of multiple datasets used in training Bark and indicated that approximately 919 hours of audio associated with the Jamendo Dataset were used.

60. Jamendo is informed and believes that Jamendo was explicitly listed as a source in that table under the "Music" category, alongside other datasets such as Common Voice, AudioSet and FSD50K.

61. Separately, in a November 2023 article on the website "Musikindustrin.se," (https://www.musikindustrin.se/), a website which monitors and reports on the Swedish music industry, Bark was identified as having been trained on a large and diverse collection of audio data, encompassing speech, music, and environmental sounds and specifically identifies Jamendo as a source used by Suno as part of the development of Bark.

13

(https://www.musikindustrin.se/2023/11/21/johansson-om-suno-ai-rokk-tiktok-mm/).

62.     These sources each state that Jamendo's library was used by Suno in its platform development process under a Creative Commons license. However, as noted above, the applicable Creative Commons license does not permit commercial use. Thus, Suno's use of the Jamendo Database and the MTG-Jamendo dataset exceeds the scope of the Creative Commons license and is unauthorized.

63.     Upon information and belief, Suno necessarily reproduced, stored, and created derivative works of copyrighted material, including the MTG-Jamendo Dataset, in violation of applicable licensing restrictions.

64.     Suno's use of such data was undertaken for commercial purposes, including the development and deployment of its generative AI technologies, and without obtaining the required permissions from Jamendo. Such conduct constitutes willful copyright infringement of the MTG-Jamendo Dataset and the Jamendo Database from which it is derived.

Jamendo's Efforts to License and Suno's Non-Payment

65.     In early 2025, upon learning of Suno's use of the MTG-Jamendo Dataset for commercial purposes, Jamendo sought to initiate discussions with Suno regarding a commercial license.

66.     Jamendo sought to resolve the matter through negotiation, consistent with its standard practice of licensing datasets for AI and machine learning uses, but Suno failed to respond to Jamendo's resolution efforts.

67.     On September 29, 2025, Jamendo issued an invoice to Suno for its unauthorized commercial use of the MTG-Jamendo dataset. Attached hereto as **Exhibit B** is a true and correct copy of the invoice.

ME1\61603843.v1

68.     Suno confirmed receipt of the invoice by October 3, 2025, but did not further respond to Jamendo's communications and did not pay the invoice.

69.     On October 14, 2025, Jamendo's counsel in Belgium sent a formal notice of default to Suno regarding the unpaid invoice and unauthorized use of the Dataset.

70.     Upon information and belief, Suno has continued to use the MTG-Jamendo Dataset despite receiving notice that such use for commercial purposes requires a license from Jamendo.

71.     Suno has failed to cure its default, has not paid the invoiced amount, and has continued to retain the benefits of its unauthorized use of the MTG-Jamendo Dataset.

## CLAIMS FOR RELIEF

### Count I

### Copyright Infringement in Violation of 17 U.S.C. §§ 101 *et seq.*

72.     Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

73.     Jamendo owns valid and enforceable rights in a copyrighted compilation consisting of the MTG-Jamendo Dataset, including its selection, coordination, and arrangement of metadata and associated content.

74.     On or around June 17, 2026, the U.S. Copyright Office issued Registration No. TX-9-606-566 concerning the MTG-Jamendo Dataset. Jamendo is the owner and holder of Registration No. TX-9-606-566 issued by the U.S. Copyright Office. Attached hereto as **Exhibit C** is a true and correct copy of the copyright registration dated June 17, 2026.[1]

75.     The MTG-Jamendo Dataset embodies Jamendo's structured metadata systems, including tagging frameworks, classification methods, and organizational schema developed and

---

[1]  Jamendo has filed an application to register the Jamendo Database with the U.S. Copyright Office and will request to amend this Complaint once a registration has been issued.

15

ME1\61603843.v1

maintained through substantial investment and ongoing effort. The MTG-Jamendo Dataset was created by Jamendo from the Jamendo Database and is a derivative work thereof.

76.    The MTG-Jamendo Dataset was made available under the CC BY-NC 4.0 license, which permits use only for non-commercial purposes and prohibits use directed toward commercial advantage or monetary compensation.

77.    Upon information and belief, Suno used the MTG-Jamendo Dataset to develop, train, and operate its commercial AI system, SunoAI.

78.    Upon information and belief, Suno's use of the MTG-Jamendo Dataset constitutes commercial use within the meaning of the CC BY-NC 4.0 license and exceeds the scope of any permission granted.

79.    Because Suno's use falls outside the scope of the CC BY-NC 4.0 license, Suno's copying and use of the MTG-Jamendo Dataset were unauthorized.

80.    Upon information and belief, Suno reproduced Jamendo's copyrighted MTG-Jamendo Dataset, including by copying, storing, and processing the MTG-Jamendo Dataset in whole or in substantial part within its machine learning training systems.

81.    Such acts constitute reproduction and use of the MTG Jamendo Dataset without authorization in violation of Jamendo's exclusive rights under 17 U.S.C. § 106(1).

82.    Suno's acts of infringement of the MTG-Jamendo dataset are a willful violation of 17 U.S.C. § 106 because the works were distributed with clear non-commercial licensing restrictions and notices.

83.    Suno's infringement has been and continues to be willful, including because Suno had notice of the licensing restrictions governing the MTG-Jamendo Dataset and continued its conduct notwithstanding such notice.

16

84.     As a direct and proximate result of Suno's infringement, Jamendo has suffered and will continue to suffer irreparable harm, including loss of control over its compilation, diminution in the value of its licensing market, and loss of revenue.

85.     Unless enjoined by this Court, Suno will continue to infringe Jamendo's rights. Jamendo is therefore entitled to injunctive relief.

86.     Jamendo is further entitled to recover its actual damages and any additional profits of Suno attributable to the infringement, or, in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c), as well as its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## Count II

### Copyright Infringement in Violation of 17 U.S.C. §§ 101 *et seq.*

87.     Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

88.     Jamendo is the holder of exclusive, worldwide, transferable license to numerous musical works and sound recordings present within Jamendo's commercial licensing business. These exclusive licenses have been issued by various artists. The exclusive licenses include the exclusive rights to reproduce, modify, fix, publish, broadcast, distribute or transfer in any format, publicly communicate, perform, or broadcast, including through digital audio means. For the majority of the works for which Jamendo holds an exclusive license, the artist has issued an underlying open license allowing specific, limited uses of the musical work at issue, such as a Creative Commons license. While such licenses permit certain uses by third parties, such uses have specific conditions and limitations. A common restriction that Jamendo's artist licensors have included in their underlying open licenses is a restriction against commercial uses of their musical works and sound recordings. Such restrictions and limitations are not included in Jamendo's

17

exclusive licenses which expressly include the exclusive right to promote the artist or Jamendo, to be included in Jamendo's Licensing Commercial Program, and even to be used "for the purposes of text and data mining, machine learning, research, training, development, and testing of next-generation AI models, products, services, software, and tools. This includes the commercial and/or non-commercial use and launch of such AI models, products, services, software, and tools." Jamendo thus holds exclusive rights to all uses of the musical works and sound recordings at issue beyond those granted in any applicable underlying license. Jamendo's ownership of the exclusive license to the musical works and sound recordings grants it standing to bring claims of copyright infringement for any uses within the scope of its exclusive license. *See* 17 U.S.C. § 501(b); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1002 (9th Cir. 2015).

89. Attached as **Exhibit A** is a list of musical works and sound recordings for which Jamendo holds an exclusive license as described above, and for which the artists have issued an underlying license with a restriction on commercial uses according to the underlying license identified with each musical work, and the information concerning the registration of each musical work with the U.S. Copyright Office. The information contained in **Exhibit A** is incorporated as if set forth herein.

90. Each musical work listed in **Exhibit A** embodies a musical work as described in 17 U.S.C. § 102(a)(2).

91. Upon information and belief, Suno used some or all of the musical works and sound recordings listed in **Exhibit A** to develop, train, and operate its commercial audio AI systems, Fugatto and Audio Flamingo. Suno's use of the tracks at issue was intended for or directed toward commercial advantage or monetary compensation, including uses generating revenue through advertising, affiliate programs, or product integration, as well as uses that confer a commercial

advantage by reducing research and development costs or accelerating the development of commercial products and services, regardless of whether a particular system has been publicly released

92.     Upon information and belief, Suno's uses of the musical works and sound recordings listed in **Exhibit A** constitutes commercial use within the meaning of the CC BY-NC 4.0, license and exceeds the scope of any permission granted.

93.     Because Suno's use falls outside the scope of the CC BY-NC 4.0 license, Suno's copying and use of the MTG-Jamendo Dataset was unauthorized.

94.     Upon information and belief, Suno reproduced the musical works and sound recordings in **Exhibit A**, including by copying, storing, and processing the musical works and sound recordings in whole or in substantial part within its machine learning training systems.

95.     Such acts constitute reproduction and use of the musical works and sound recordings without authorization in violation of 17 U.S.C. § 106(1).

96.     Suno's infringement has been and continues to be willful, including because Suno had notice of the licensing restrictions governing the MTG-Jamendo Dataset and continued its conduct notwithstanding such notice.

97.     As a direct and proximate result of Suno's infringement, Jamendo has suffered and will continue to suffer irreparable harm, including loss of control over its copyrighted musical works and sound recordings, diminution in the value of its musical works and sound recordings, and loss of licensing revenue.

98.     Unless enjoined by this Court, Suno will continue to infringe Jamendo's rights. Jamendo is therefore entitled to injunctive relief.

99.     Jamendo is further entitled to recover its actual damages and any additional profits

ME1\61603843.v1

of Suno attributable to the infringement, or, in the alternative, statutory damages pursuant to 17

U.S.C. § 504(c), as well as its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## Count III

### Breach of Contract - CC BY-NC 4.0 License

100. Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

101. The MTG-Jamendo Dataset was made publicly available subject to CC BY-NC 4.0 license, together with the accompanying notice, stating:

> Please note that the MTG-Jamendo Dataset is made available solely for non-commercial research and academic use. Any other use, including but not limited to commercial applications, requires prior written authorization from Jamendo S.A. For any commercial use requests, please contact Jamendo's licensing team at hello@jamendo.com to obtain a license adapted to your project.

102. The CC BY-NC 4.0 license grants permission to use the MTG-Jamendo Dataset subject to express conditions, including a restriction limiting use to non-commercial purposes.

103. The MTG-Jamendo Dataset was further distributed with the clear notice, through the GitHub repository, stating that it is made available solely for non-commercial research and academic use, and that any commercial use requires prior written authorization from Jamendo.

104. These notices define commercial use to include any use intended for or directed toward commercial advantage or monetary compensation, including uses generating revenue through advertising, affiliate programs, or product integration.

105. Upon information and belief, by accessing, downloading, and using the MTG-Jamendo Dataset, Suno accepted and assented to the governing terms and conditions, including both the CC BY-NC 4.0 license and the accompanying restrictions and notices.

106. Upon information and belief, Suno used the MTG-Jamendo Dataset to develop,

20

ME1\61603843.v1

train, and operate its commercial artificial intelligence system, SunoAI, without obtaining authorization or a commercial license.

107.    Upon information and belief, Suno's use of the MTG-Jamendo Dataset for commercial purposes violates the express non-commercial restrictions set forth in the CC BY-NC 4.0 license and the accompanying notice.

108.    The governing terms and restrictions were intended to protect the commercial value of the MTG-Jamendo Dataset and Jamendo's licensing interests.

109.    Jamendo is an intended beneficiary of those terms and restrictions.

110.    Upon information and belief, Suno's conduct constitutes a material breach of the governing terms and conditions.

111.    As a direct and proximate result of Suno's breach, Jamendo has suffered damages, including but not limited to, lost licensing revenue and diminution in the value of the MTG-Jamendo Dataset.

112.    Suno's breach has caused and will continue to cause irreparable harm to Jamendo, for which Jamendo has no adequate remedy at law.

113.    Jamendo is entitled to all available remedies for breach of contract, including damages and such further relief as the Court deems just and proper.

## Count IV

### Breach of Contract - Terms of Use

114.    Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

115.    Jamendo allows users to make queries to the Jamendo Database and access the music tracks listed within the Jamendo Database at its website, located at www.jamendo.com (the

21

ME1\61603843.v1

"Jamendo Website").

116.    Use of the Jamendo Website is governed by written terms and conditions identified

as the Terms of Use. Such Terms of Use have been located at

https://www.jamendo.com/legal/terms-of-use. The Terms of Use governing Jamendo's Website

have always restricted the type and manner of use of the content found on and through the Jamendo

Website.

117.    As a condition of use of the Jamendo Website, all users are required to be bound

by the Terms of Use. Specifically, the Terms of Use state that:

> This is a contract between you and Jamendo. By accessing, visiting, or using the Jamendo website and services, whether or not you register, you agree to be bound by these Terms of Use. If you are using the Jamendo website on behalf of your employer or a company, you confirm that you have the authority to bind your employer/company to these Terms of Use and any License/Subscription you may purchase. References to "you" and "your" in these Terms of Use will apply to both you and your employer/company, as applicable. Do not agree to these Terms or any License on behalf of your employer/company if you are not authorized to do so. Please read them carefully. If you do not accept these Terms of Use, do not use Jamendo's website or services.

118.    Users must affirmatively accept and agree to be bound by the Terms of Use, in

order to be permitted to access the Website content.

119.    The Terms of Use at Jamendo's Website further prohibit the use of content from

Jamendo's Website for data mining and machine learning, among other uses:

> Users are prohibited from using any content from Jamendo for commercial text and data mining purposes, including but not limited to machine learning, artificial intelligence, or any other automated data analysis techniques. Such unauthorized use may result in legal action. Content from Jamendo may be used for research and scientific purposes, only for non-commercial use, under certain circumstances. We request that you seek prior written authorisation from Jamendo before using Jamendo content for such purposes.

22

120.     Upon information and belief, Suno accessed, used, and downloaded information and music tracks from the Jamendo Website and thereby accepted and assented to the Terms of Use listed on the Jamendo Website.

121.     Upon information and belief, Suno breached the Terms of Use from the Jamendo Website by using the information and music tracks downloaded from the Jamendo Website for commercial purposes without obtaining authorization from Jamendo.

122.     Upon information and belief, Suno's use of the information and music tracks downloaded from the Jamendo Website violates the express restrictions set forth in the Terms of Use.

123.     Suno's conduct constitutes a material breach of the governing Terms of Use of the Jamendo Website.

124.     As a direct and proximate result of Suno's breach, Jamendo has suffered damages, in an amount to be proved at trial.

125.     Suno's breach has caused and will continue to cause irreparable harm to Jamendo, for which Jamendo has no adequate remedy at law.

126.     Jamendo is entitled to all available remedies for breach of contract, including damages and such further relief as the Court deems just and proper.

## Count V

### Unjust Enrichment

127.     Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

128.     Jamendo has developed and maintains a valuable dataset reflecting substantial investment in the creation, organization, and maintenance of musical content, metadata systems,

23

and classification structures.

129.    The MTG-Jamendo Dataset embodies its structured organization of metadata, including tagging frameworks, classifications, and curated arrangements developed through significant time, effort, and expertise.

130.    Jamendo has also developed a commercial market for licensing its catalogue, metadata, and related datasets for AI and machine learning purposes.

131.    Upon information and belief, Suno obtained and used the MTG-Jamendo Dataset in connection with the development, training, and operation of its commercial artificial intelligence system, SunoAI.

132.    Upon information and belief, by using the MTG-Jamendo Dataset, Suno obtained substantial benefits, including immediate access to a large, organized, and commercially useful catalogue of rights-cleared music with detailed metadata, classifications, and tags suitable for AI training.

133.    Upon information and belief, Suno also avoided the substantial time, cost, and effort required to build or license a comparable dataset, including acquiring rights from thousands of artists, organizing and maintaining a music database, validating metadata, and developing classification and tagging systems.

134.    Upon information and belief, Suno has profited, and continues to profit, from its use of the Dataset, including through the commercialization of SunoAI.

135.    Suno's retention of these benefits without compensation to Jamendo is inequitable.

136.    Jamendo reasonably expected to be compensated for commercial uses of its dataset, as reflected in its licensing practices and market negotiations for AI-related uses.

137.    It would be against equity and good conscience to permit Suno to retain the benefits

ME1\61603843.v1

obtained through its unauthorized use of the MTG-Jamendo Dataset.

138.    As a direct and proximate result of Suno's conduct, Jamendo has suffered harm, including lost licensing revenue and diminution in the value of its dataset and related commercial opportunities.

139.    Jamendo is entitled to restitution and disgorgement of the benefits unjustly retained by Suno.

## Count VI

### Unfair and Deceptive Acts - Mass. Gen. Laws ch. 93A, § 11

140.    Jamendo repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

141.    Jamendo and Suno are engaged in trade or commerce.

142.    Jamendo has developed its commercially valuable catalogue, metadata, and related datasets, including the MTG Jamendo Dataset, through substantial investment in its platform, metadata systems, classification structures, and curated organization of musical content.

143.    Jamendo licenses its catalogue, metadata, and related datasets for commercial use, including for AI and machine learning applications, through negotiated agreements.

144.    Jamendo has been approached by companies seeking licensed access to the MTG-Jamendo Dataset for AI-related uses, and such uses are subject to negotiated compensation.

145.    The MTG-Jamendo Dataset was made available solely for non-commercial research purposes and subject to clear licensing restrictions prohibiting commercial use without authorization.

146.    Upon information and belief, Suno knowingly used the MTG-Jamendo Dataset to develop, train, and operate its commercial AI system, SunoAI, without obtaining a license.

ME1\61603843.v1

147.    Upon information and belief, Suno's conduct allowed it to obtain immediate access to a large, organized, and commercially useful music catalogue with detailed metadata and classifications.

148.    By doing so, Suno avoided the substantial costs associated with licensing comparable data or independently building a dataset of similar scope, structure, and quality.

149.    Suno's conduct provided it with an unfair competitive advantage in the market for AI-generated music and related technologies.

150.    Suno's conduct constitutes unlawful business practices in that it violates, inter alia, the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and breaches binding licensing terms governing the MTG-Jamendo Dataset, including the CC BY-NC 4.0 license and accompanying restrictions.

151.    Suno's conduct was unfair and deceptive within the meaning of Massachusetts General Laws Chapter 93A, §11, including because it involved the knowing exploitation of the MTG-Jamendo Dataset subject to clear non-commercial restrictions in order to gain commercial benefit, including by accelerating development of SunoAI without incurring comparable data acquisition costs.

152.    Suno's conduct was immoral, unethical, oppressive, and unscrupulous, and falls within the penumbra of established concepts of unfair competition. *See Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.*, 152 F. Supp. 2d 95, 108 (D. Mass. 2001) (conduct violates Chapter 93A where it is "immoral, unethical, oppressive, or unscrupulous" and falls within the "penumbra" of established unfairness); *see also Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1513 (1st Cir. 1989) (requiring a level of "rascality")).

ME1\61603843.v1

153. Upon information and belief, Suno knew or was willfully blind to the licensing restrictions governing the MTG-Jamendo Dataset, including restrictions presented through publicly accessible repositories and the accompanying notice.

154. As a direct and proximate result of Suno's unfair and deceptive acts, Jamendo has suffered loss of money or property, including lost licensing revenue, lost business opportunities, and diminution in the value of its dataset and catalogue.

155. Upon information and belief, Suno's conduct was willful and knowing, entitling Jamendo to multiple damages under Chapter 93A, §11.

156. Jamendo is entitled to recover its attorneys' fees and costs pursuant to Chapter 93A, §11.

**PRAYER FOR RELIEF**

WHEREFORE, Jamendo respectfully requests that this Court enter judgment in its favor and against Suno, and grant the following relief:

1. Declaring that Suno has infringed Jamendo's copyrighted compilation and musical works and sound recordings in violation of 17 U.S.C. § 106 and § 501;

2. Declaring that Suno has breached the governing terms and conditions applicable to its use of the MTG-Jamendo Dataset, including the CC BY-NC 4.0 license;

3. Declaring that Suno has been unjustly enriched at Jamendo's expense;

4. Declaring that Suno has engaged in unfair and deceptive acts and practices in violation of Massachusetts General Laws Chapter 93A, § 11;

5. Preliminarily and permanently enjoining Suno, and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly copying, using, reproducing, or otherwise exploiting the MTG-Jamendo Dataset, or any

27

ME1\61603843.v1

portion thereof, as well as any of the musical works and sound recordings listed in **Exhibit A**, for commercial purposes without authorization;

6.    Ordering Suno to cease use of the MTG-Jamendo Dataset, as well as any of the musical works and sound recordings listed in **Exhibit A**, in connection with its artificial intelligence systems, including SunoAI, and to delete or destroy all copies of the dataset and any materials derived therefrom to the extent required by law;

Awarding Jamendo its actual damages and any additional profits of Suno attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount no less than EUR 17.8 million, or, in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c), which provides for statutory damages of up to USD 30,000 per infringed work, and up to USD 150,000 per infringed work in cases of willful infringement, subject to the Court's determination and applicable law;

7.    A finding that Suno's infringement was willful, entitling Jamendo to enhanced statutory damages;

8.    Awarding Jamendo damages for Suno's failure to pay the invoiced amount for its unauthorized commercial use of the MTG-Jamendo Dataset, together with all applicable interest and charges as permitted by law;

9.    Awarding Jamendo restitution and disgorgement of all revenues, profits, and other benefits unjustly obtained by Suno;

10.    An award of damages arising from Suno's breach of contract, including but not limited to the fair market value of a commercial license for Suno's use of the MTG-Jamendo Dataset as well as the musical works and sound recordings listed in **Exhibit A**;

11.    Awarding Jamendo multiple damages under Massachusetts General Laws Chapter 93A, § 11, for Suno's willful and knowing conduct;

28

12.     Awarding Jamendo its costs and reasonable attorneys' fees pursuant to 17 U.S.C. §

505 and Massachusetts General Laws Chapter 93A, § 11;

13.     Awarding pre-judgment and post-judgment interest as permitted by law;

14.     Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Jamendo demands a trial by jury on all issues so triable.

DATED: June 29, 2026                    Respectfully submitted,

S.A. JAMENDO,
By their attorneys,

*/s/ Alexander T. Hornat*
Alexander T. Hornat (BBO # 687588)
ahornat@mccarter.com
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
T: (617) 449-6500
F: (617) 607-9200

Todd A. Roberts (*pro hac vice* forthcoming)
todd.roberts@ropers.com
Kevin W. Isaacson (*pro hac vice* forthcoming)
kevin.isaacson@ropers.com
ROPERS MAJESKI PC
333 W. Santa Clara St., Suite 930
San Jose, CA 95113
Telephone: 408.287.6262
Facsimile: 408.918.4501

ME1\61603843.v1